## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case No. 1:24-CV-20078-CMA

| | |
|---|---|
| VICTOR DACAL and<br>MADELEINE HERNANDEZ<br><br>Plaintiffs,<br><br>v.<br><br>TAURUS INTERNATIONAL<br>MANUFACTURING, INC.,<br>TAURUS HOLDINGS, INC., and<br>BASS PRO OUTDOOR WORLD, LLC<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

_____

### <u>SECOND AMENDED COMPLAINT[1]</u>

Plaintiffs VICTOR DACAL ("Mr. Dacal") and MADELEINE HERNANDEZ ("Mrs. Hernandez") (collectively, the "Plaintiffs"), sue Defendants TAURUS INTERNATIONAL MANUFACTURING, INC. ("TIMI"), TAURUS HOLDINGS, INC. ("Taurus Holdings"), (collectively, the "Taurus Defendants,"), and BASS PRO OUTDOOR WORLD, LLC ("Bass Pro Shops") (the Taurus Defendants and Bass Pro Shops are sometimes collectively referred to herein as "Defendants"), and state:

1.     This is an action for damages in excess of $75,000.00, exclusive of interest, attorneys' fees and costs.

2.     Mr. Dacal is an individual, *sui juris*, and a resident of Miami-Dade County, Florida.

---

[1] Filed pursuant to the Court's Order granting Renewed Motion to Amend [DE 44].

3.      Mrs. Hernandez is an individual, *sui juris*, and a resident of Miami-Dade County, Florida.

4.      At all material times described herein, Plaintiffs Mr. Dacal and Mrs. Hernandez were (and are) legally married.

5.      All conditions precedent to the prosecution of this action have been performed, satisfied, excused or waived.

6.      Plaintiffs have agreed to pay an attorneys' fee for the prosecution of this action based upon a contingency fee.

## INTRODUCTION

7.      Plaintiff Mr. Dacal was seriously and permanently injured on April 12, 2023, when his semi-automatic 9mm pistol, a Taurus GX4 model, serial number: 1GA49883, (hereinafter referred to as the "Subject Firearm"), discharged unintentionally after falling and striking the ground due to a product defect.

8.      The Subject Firearm was unreasonably dangerous and unfit for its intended use due to a defect that allowed the trigger to move rearward when the firearm was subject to an impact, such as being dropped on the floor, which resulted in the Subject Firearm firing unexpectedly and against the intentions of the handler (hereinafter referred to as the "Drop-Fire Defect").

## THE TAURUS DEFENDANTS

9.      Defendant TIMI is a Georgia corporation, with its principal place of business in Bainbridge, Georgia.

10.     Defendant Taurus Holdings is a Georgia corporation, with its principal place of business in Bainbridge, Georgia.

11.     Taurus Holdings is the 100% owner and stockholder of TIMI.

12.     The Taurus Defendants are in the business of designing, engineering, manufacturing, testing, inspecting, marketing, importing, distributing, supplying and/or selling firearms.

13.     According to their public website, at the Bainbridge, Georgia facilities, "Taurus Holdings companies manufacture an incredible array of products from traditional single action revolvers, to pistols and revolvers of various designs, and long guns ranging from classic single shots to modern semi-autos. [Taurus Holdings] employ over three hundred skilled workers and staff, who support manufacturing, importation, service, sales and marketing of Taurus and subsidiary branded firearms."

14.     According to their public website, "TIMI manufactures some models of Taurus brand firearms in the US, and imports the remainder from Taurus Armas. TIMI handles servicing for all Taurus branded firearms in the US either imported or manufactured by TIMI."

15.     Many individuals who work on designing, manufacturing, engineering, testing, inspecting, marketing, importing, distributing, supplying and/or selling Taurus-branded firearms are employees of both companies, TIMI and Taurus Holdings. The Taurus Defendants also share the same office and have the same CEO, Bret Vorhees.

16.     TIMI and Taurus Holdings are each included as either insureds or additional insureds on the same insurance policies that would provide coverage for the claims alleged herein.

17.     At all times material herein, Taurus Holdings acted as principal to TIMI, as it was the 100% owner of TIMI, and exercised and/or retained the right to exercise extensive and continuous control over TIMI.

18.     At all times material herein, TIMI was an agent of Taurus Holdings, as it acted on behalf of and/or under the control of Taurus Holdings.

19.     Because of its extensive and continuous control over TIMI, Taurus Holdings is vicariously liable for all injuries, damages, and losses that resulted from the acts or omissions described herein of TIMI, and vice versa.

20.     Alternatively or additionally, Taurus Holdings and TIMI were engaged in a joint venture in the manufacture and sale of firearms, with a joint control or joint right of control over the manufacture and sale of firearms, a joint proprietary interest over the manufacture and sale of firearms, a joint right to share in the profits from the manufacture and sale of firearms, and a joint duty to share in the losses from the manufacture and sale of firearms.

21.     Plaintiffs have a reasonable belief that TIMI has the authority to operate on behalf of, and for the benefit of, Taurus Holdings, and vice versa.

22.     TIMI and Taurus Holdings are thus so intertwined for each other's liabilities that they are essentially one entity with regard to the allegations in this Amended Complaint, and/or it is not practical or feasible for Plaintiffs to discern at this time which action was taken by one or both of the Taurus Defendants and therefore refers to both TIMI and Taurus Holdings collectively herein as the Taurus Defendants, whose combined conduct directly caused Plaintiffs' injuries.

23.     The Taurus Defendants were responsible for designing, engineering, manufacturing, testing, inspecting, marketing, importing, distributing, supplying and/or selling the Subject Firearm.

24.     The Taurus Defendants placed the Subject Firearm into the stream of commerce to be sold in the State of Florida.

## BASS PRO SHOPS

25.     Defendant Bass Pro Shops is, upon information and belief, a Missouri limited liability company with its principal place of business in Springfield, Missouri, is registered to do

business in the State of Florida and has registered the fictitious name, "Bass Pro Shops Outdoor World" with the Florida Secretary of State.

26.     Defendant Bass Pro Shops sells outdoor gear for enthusiasts of fishing, hunting, camping and golfing and is engaged in the marketing, advertising, promotion, sale and/or distribution of firearms for ultimate sale and use to the general public as ultimate consumers.

27.     Defendant Bass Pro Shops owns and operates the storefront located at 11551 NW 12th Street, Miami, Florida 33172 and/or holds the federal firearms license for the storefront located at 11551 NW 12th Street, Miami, Florida 33172.

28.     Defendant Bass Pro Shops sold the Subject Firearm from its store located at 11551 NW 12th Street, Miami, Florida 33172 to Plaintiffs.

## JURISDICTION AND VENUE

29.     Jurisdiction is proper in this County pursuant to Florida Statute §48.193(1) as Defendants had a reasonable expectation that they would be hailed into any court within these United States, including a court in the State of Florida, by reason of injection of their products and services into the stream of commerce and/or by operating a storefront in this County.

30.     Defendants are subject to long-arm jurisdiction pursuant to Section 48.193, Florida Statutes, by virtue of its: (1) operating, conducting, engaging in, or carrying on a business or business venture within this state; (2) committing a tortious act within this state; (3) causing injury to persons or property within this state; and (4) for other independent reasons under Chapter 48, Florida Statutes.

31.     Venue is proper in Miami-Dade County, Florida because, among other things, Plaintiffs' causes of action accrued in this County, Plaintiffs suffered their injuries in this County,

the subject firearm was purchased in this County, and for other grounds set forth in Chapter 47, Florida Statutes.

## THE SUBJECT FIREARM

32.     The Subject Firearm was designed, manufactured, engineered, marketed, distributed and/or imported by the Taurus Defendants.

33.     In the proper exercise of their Second Amendment Right to keep and bear arms, on or about December 19, 2021, the Subject Firearm was purchased new from Bass Pro Shops in Miami, Florida by Mrs. Hernandez.

34.     Upon information and belief, at the time the Subject Firearm was purchased, Bass Pro Shops was an authorized dealer and/or retailer of firearms designed, manufactured, engineered, marketed, distributed and/or imported by the Taurus Defendants.

35.     In the proper exercise of their Second Amendment Right to keep and bear arms, Mrs. Hernandez purchased the Subject Firearm intending for it to be used by herself, her family and household, including her husband, Mr. Dacal with whom she resides.

36.     At all material times hereto, it was reasonably expected that Mr. Dacal, who resides in the same household as Mrs. Hernandez, would use or be affected by the Subject Firearm.

37.     As part of the Subject Firearm's "Firearms Safety System", it was supposed to be designed and manufactured with a "trigger safety" feature intended to prevent the firearm from discharging in the event it was accidentally dropped. The Taurus GX4 Instruction Manual describes this feature as follows:

> **3. Trigger Safety.** The trigger safety's purpose is to prevent the trigger mechanism from being actuated in the event the firearm was accidentally dropped. Once you are ready to fire, the trigger safety will move automatically in the fire position as you press the trigger.

*See* Taurus GX4 Instruction Manual (hereinafter, the "Instruction Manual"), at p. 8, a true and correct copy of which is attached hereto as **Exhibit 1**.

38.     As part of the Subject Firearm's "Firearms Safety System", it was supposed to be designed and manufactured with a "firing pin block" feature which was also designed and intended to prevent the firearm from discharging in the event it was accidentally dropped. The Taurus GX4 Instruction Manual describes this feature as follows:

> **4. Firing Pin Block.** The firing pin block's purpose is to prevent the gun from firing in the event the firearm was accidentally dropped. The firing pin block interferes with the forward travel of the firing pin until the trigger is pulled. Once you are ready to fire, pressing the trigger moves this safety component from its "safe" (blocking) position to its "fire" (free) position.

*See id.*

39.     Plaintiffs received a copy of the Instruction Manual in the form attached as Exhibit 1 when the Subject Firearm was purchased from Bass Pro Shops.

40.     The Instruction Manual is also published on the Taurus Defendants' public website.

41.     Prior to purchasing the Subject Firearm, Plaintiffs researched firearms and both specifically chose to purchase the Subject Firearm because of its Firearms Safety System – i.e., the trigger safety and firing pin block – specifically designed to prevent the firearm from discharging in the event it was accidentally dropped. In so doing, Plaintiffs relied on the statements contained in the Instruction Manual and on the Taurus Defendants' website (among other places).

42.     At all times material hereto, and in the proper exercise of their Second Amendment Right to keep and bear arms, both Plaintiffs had their Concealed Weapon or Firearm License issued by the State of Florida.

43.     The Subject Firearm fit Plaintiffs' need for a concealed carry firearm. Indeed, the Subject Firearm, and all of the Taurus GX4 pistols, are marketed as "micro-compact" and "reaching unprecedented new heights in concealed carry firearm engineering, ergonomics and innovation."[2]

44.     The Taurus Defendants provided a Limited Lifetime Warranty to the original purchaser of the Subject Firearm (referred to as the "Warranty"). *See* Instruction Manual, at pp. 34-5.

45.     The Taurus Defendants warranted, among other things, that the Subject Firearm "was made free of defects in material, function, and workmanship". *Id*, at p. 34.

46.     Consistent with Florida Statute §672.318, Mr. Dacal was a third party beneficiary of all express or implied warranties by the seller, distributor, and/or manufacturer of the Subject Firearm.

47.     At all material times, the Subject Firearm was used in the manner and purpose for which it was intended.

**THE DROP-FIRE INCIDENT**

48.     Mr. Dacal regularly carried the Subject Firearm for personal protection.

49.     The Subject Firearm was kept in a holster when not in use.

---

[2] *See e.g.,* the Taurus Defendants' website: https://www.taurususa.com/pistols/taurus-gx4 (dated February 6, 2024) and https://web.archive.org/web/20211203121540/https://www.taurususa.com/pistols/taurus-gx4 (Taurus website as of December 3, 2021 as captured by Common Crawl).

50.     On April 12, 2023, Mr. Dacal was reaching for the Subject Firearm on his nightstand, when it fell out of the holster, and hit the floor.  When the Subject Firearm hit the floor, despite the trigger safety and firing pin block features intended specifically to prevent the trigger from being actuated if accidentally dropped, the Subject Firearm fired a bullet. For ease of reference, this incident is hereinafter referred to as the "drop-fire incident."

51.     The bullet that fired during the drop-fire incident struck Mr. Dacal on the front of his left leg near his knee and exited through his rear upper thigh, severely and permanently injuring Mr. Dacal.

52.     Mr. Dacal was fifty-two (52) years old at the time of the drop-fire incident.

53.     As a direct result of the drop-fire incident, Mr. Dacal suffered serious, life-threatening injuries that resulted in medical treatment and which are permanent.

54.     As a direct and proximate result of the drop-fire incident, Mr. Dacal has been damaged and continues to be damaged, and claims all damages to which he may be entitled as applicable law may provide, including, but not limited to:

(a)     pain and suffering, both past and future;

(b)     medical expenses, both past and future;

(c)     physical handicap, disability, disfigurement, permanent injury and impairment;

(d)     loss of full use of his leg;

(e)     lost wages and earning capacity both past and future;

(f)     loss of capacity to enjoy life; and,

(g)     any and all other damages to Mr. Dacal which this Court may find applicable, including punitive damages.

55.     At the time of the drop-fire incident, Plaintiffs Mrs. Hernandez and Mr. Dacal were legally married.

56.     As a direct result of the drop-fire incident, Mrs. Hernandez has been deprived of the love, affection, companionship, and consortium of her husband and will continue to be so deprived.

## THE SUBJECT FIREARM'S DROP-FIRE DEFECT

57.     The drop-fire incident was a direct and proximate result of the Subject Firearm's Drop-Fire Defect.

58.     The Drop-Fire Defect was a direct and proximate cause of Plaintiffs' injuries.

59.     The Drop-Fire Defect prevented the Subject Firearm's safety systems, including the trigger safety and/or the firing pin block, from working as intended and represented, and instead, allowed the Subject Firearm to discharge a bullet after accidentally falling and striking the ground.

60.     As a result of defective design and/or manufacturing, which resulted in the Drop-Fire Defect, the Subject Firearm was unreasonably dangerous and unfit for its intended use because, among other things, as a consequence of the Drop-Fire Defect, the trigger and/or firing pin of the Subject Firearm was allowed to move rearward when the Subject Firearm was dropped accidentally causing the Subject Firearm to discharge or "fire" unexpectedly and against the intentions of the handler, and against the intended design and manufacture of the trigger safety feature.

61.     The Drop-Fire Defect is a latent defect and the Subject Firearm was defective in a way that would not be apparent to Plaintiffs nor the public.

62.    At all material times, the Subject Firearm was being used in the intended manner, including at the time of injury.

63.    The Subject Firearm was defective at the time it was sold and/or transferred to Plaintiffs.

64.    The Taurus Defendants knew or should have known of the existence of the Drop-Fire Defect in the Subject Firearm (and their other GX4 pistols) at the time they placed the Subject Firearm into the stream of commerce for use by the consumer without further inspection for defects.

65.    The Taurus Defendants either did discover or should have discovered the existence of the Drop-Fire Defect in the Subject Firearm (and their other GX4 pistols) when conducting the appropriate testing on the firearms before placing them into the stream of commerce for use by the consumer knowing it would reach the consumer without further inspection for defects.

66.    The Taurus Defendants failed to conduct the proper testing and/or inspection of the Subject Firearm (and their other GX4 pistols) before placing them into the stream of commerce for use by the consumer knowing it would reach the consumer without further inspection for defects.

67.    Despite actual and/or constructive knowledge of the Drop-Fire Defect, the Taurus Defendants never remedied the Drop-Fire Defect, and never issued an effective and complete warning to the public or recall of the Subject Firearm prior to the drop-fire incident.

68.    In fact, prior to distribution of the Subject Firearm, the Taurus Defendants continued to falsely represent to the public and Plaintiffs that the subject pistol was safe and reliable – inclusive of the trigger safety and firing pin block – despite their knowledge of the Drop-

Fire Defect and that individuals had been and could be seriously injured as a result of the Drop-Fire Defect.

69.     The Taurus Defendants had a duty to disclose and warn Plaintiffs truthfully and accurately, and not to conceal or misrepresent the risks attendant with the Drop-Fire Defect. Notwithstanding this duty, and in violation thereof, the Taurus Defendants intentionally and/or negligently failed to disclose and adequately warn Plaintiffs of the Drop- Fire Defect.

70.     The Taurus Defendants falsely, fraudulently and negligently misrepresented and warranted to Plaintiffs that the Subject Firearm was safe for normal and intended use when, in fact, the Subject Firearm was not safe for normal and intended use and contained the Drop-Fire Defect.

71.     Significantly, the Taurus Defendants have since issued a safety warning regarding the Drop-Fire Defect that existed in the Subject Firearm (and their other GX4 pistols) and caused Plaintiffs' injuries:

## IMPORTANT SAFETY NOTICE

Some GX4 pistols assembled and sold only in the United States may, under certain circumstances, discharge when dropped.

 Safely unload and stop using your GX4 **IMMEDIATELY.** Failure to observe this warning may result in injury or death to you or others.

*See* https://gx4safetynotice.com/ and the Taurus Defendants' Instagram:



## COUNT I
## STRICT LIABILITY – MANUFACTURING DEFECT
### *(against all Defendants)*

72.     Plaintiff Mr. Dacal re-alleges and incorporates herein all allegations contained in Paragraphs 1 through 71.

73.     The Taurus Defendants were the designer, engineer, manufacturer, marketer, importer, and/or distributer of the Subject Firearm.

74.     The Subject Firearm has (at least one) manufacturing defect which defect existed at the time the Subject Firearm left the Taurus Defendants' control.

75.     Bass Pro Shops was the retailer who sold the Subject Firearm to Plaintiffs. At the time of the sale, the Subject Firearm contained (at least one) manufacturing defect.

76.     The manufacturing defect caused the drop-fire incident.

77.     The Subject Firearm was unreasonably dangerous because of a manufacturing defect causing it to be manufactured different from its intended design and failing to perform as the intended design would have performed.

78.     The manufacturing defect prevented the Subject Firearm's safety systems, including the trigger safety and/or the firing pin block, from working as intended, causing Mr. Dacal to be struck by a bullet from the Subject Firearm when it accidentally fell and struck the ground.

79.     The Subject Firearm was expected to and did reach Mr. Dacal without substantial change affecting its defective condition.

80.     The Subject Firearm's manufacturing defect was the direct and proximate cause of Mr. Dacal's injuries.

WHEREFORE, Plaintiff Mr. Dacal demands judgment against all Defendants for all damages available under the law, including punitive damages, prejudgment and postjudgment interest, and such further relief as may be available, including but not limited to an award of attorneys' fees and costs.

**COUNT II**
**STRICT LIABILITY – DESIGN DEFECT**
*(against all Defendants)*

81.     Plaintiff Mr. Dacal re-alleges and incorporates herein all allegations contained in Paragraphs 1 through 71.

82.     The Taurus Defendants were the designer, engineer, manufacturer, marketer, importer, and/or distributer of the Subject Firearm.

83. The Subject Firearm has (at least one) design defect which caused the Subject Firearm to be unreasonably dangerous to Mr. Dacal. The Subject Firearm was expected to and did reach Mr. Dacal without substantial change affecting that condition.

84. The design defect existed at the time the Subject Firearm left the Taurus Defendants' control.

85. Bass Pro Shops was the retailer who sold the Subject Firearm to Plaintiffs. At the time of the sale, the Subject Firearm contained (at least one) design defect.

86. The Subject Firearm failed to perform as safely as an ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable by Defendants, or alternatively, the risk of danger in the design outweighs the benefits.

87. The design defect caused the drop-fire incident.

88. The Subject Firearm's design defect was the direct and proximate cause of Mr. Dacal's injuries.

WHEREFORE, Plaintiff Mr. Dacal demands judgment against all Defendants for all damages available under the law, including punitive damages, prejudgment and postjudgment interest, and such further relief as may be available, including but not limited to an award of attorneys' fees and costs.

### COUNT III
### <u>BREACH OF EXPRESS WARRANTY</u>
#### *(against the Taurus Defendants)*

89. Plaintiffs Mr. Dacal and Mrs. Hernandez re-allege and incorporate herein all allegations contained in Paragraphs 1 through 71.

90. The Taurus Defendants provided the Warranty with the Subject Firearm. *See* Instruction Manual, at pp. 34-5.

91.     Under Florida law, Plaintiffs are both the "original purchaser" covered by the Warranty; Mrs. Hernandez as the purchaser of the Subject Firearm and Mr. Dacal as the third party beneficiary.

92.     The Taurus Defendants breached the Warranty.

93.     The Taurus Defendants made further warranties in the Instruction Manual, including, among others, that the Subject Firearm comes equipped with multiple Safety Systems including (i) a Trigger Safety designed to "prevent the trigger mechanism from bring actuated in the event the firearm was accidentally dropped;" and (ii) a Firing Pin Block designed "to prevent the gun from firing in the event it was accidentally dropped." *See* Instruction Manual, p. 8,

94.     Plaintiffs relied upon these statements in selecting, purchasing, and using the Subject Firearm.

95.     The Taurus Defendants breached these warranties.

96.     As a direct and proximate cause of the Taurus Defendant's breach, Plaintiffs suffered and continue to suffer damages.

WHEREFORE, Plaintiffs Mr. Dacal and Mrs. Hernandez demand judgment against the Taurus Defendants for all damages available under the law, including punitive damages, prejudgment and postjudgment interest, and such further relief as may be available, including but not limited to an award of attorneys' fees and costs.

**COUNT IV**
**NEGLIGENCE**
*(against the Taurus Defendants)*

97.     Plaintiff Mr. Dacal re-alleges and incorporates herein all allegations contained in Paragraphs 1 through 71.

98.    The Taurus Defendants owed a duty of care to Mr. Dacal as the purchaser and foreseeable user of their firearms, including the Subject Firearm.

99.    The Taurus Defendants breached their duty of care.

100.    The Taurus Defendants were negligent in their designing, engineering, manufacturing, marketing, selling, importing, distributing, supplying, testing and/or inspecting a firearm product in a manner that a reasonably careful designer, engineer, manufacturer, marketer, seller, importer, distributer and/or supplier would not do under like circumstances or failing to do something that a reasonably careful designer, engineer, manufacturer, marketer, seller, importer, distributer and/or supplier would do under like circumstances.

101.    The Taurus Defendants knew or should have known of the dangers associated with the defect(s) in the Subject Firearm and were negligent in at least the following ways (others to be identified during discovery):

   a.  By placing the Subject Firearm into the stream of commerce with a manufacturing defect, knowing it would reach the end-user – i.e., Plaintiff – without further inspection and without material change;

   b.  By placing the Subject Firearm into the stream of commerce with a design defect, knowing it would reach the end-user – i.e., Plaintiff – without further inspection and without material change;

   c.  By failing to properly inspect the Subject Firearm before placing it into the stream of commerce knowing it would reach the end-user – i.e., Plaintiff – without further inspection;

   d.  By failing to properly and adequately warn the public, and Plaintiffs, or providing misleading warnings, regarding the unreasonably dangerous condition of the Subject Firearm and/or the likelihood that the safety features, including the trigger safety and the firing pin block, would not work as intended which failure caused Plaintiffs to select, purchase and use the subject Firearm, ultimately resulting in the drop-fire incident and permanent injury to Mr. Dacal; and

   e.  By omitting key facts and information from their public website regarding the defects in the Subject Firearm which ultimately resulted in the Taurus

Defendants' recall of the GX4 pistols and/or by failing to issue the recall sooner to have avoided the drop-fire incident;

102.    The Taurus Defendants' conduct as described herein was inconsistent with what a reasonably careful designer, engineer, manufacturer, marketer, seller, importer, distributor and/or supplier of firearms would have done under like circumstances.

103.    As a direct and proximate result of their negligence, the Taurus Defendants placed the Subject Firearm into the stream of commerce which resulted in the drop-fire incident and severe and permanent injury to Mr. Dacal.

WHEREFORE, Plaintiff Mr. Dacal demands judgment against the Taurus Defendants for damages available under the law, including punitive damages, prejudgment and postjudgment interest, and such further relief as may be available, including but not limited to an award of attorneys' fees and costs.

### COUNT V
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
*(against all Defendants)*

104.    Plaintiff Mr. Dacal re-alleges and incorporates herein all allegations contained in Paragraphs 1 through 71.

105.    The Taurus Defendants impliedly warranted and promised that the Subject Firearm they placed into the stream of commerce, knowing it would reach the ultimate consumer without any substantial change to its condition, worked as intended, as described in the Instruction Manual and that it contained no defects.

106.    The Taurus Defendants breached that warranty by placing the Subject Firearm into the stream of commerce, knowing it would reach the ultimate consumer without any substantial change to its condition, with defects and in an unreasonably dangerous condition since it did not work as intended and designed.

107.    Bass Pro Shops impliedly warranted and promised that the Subject Firearm it sold to Plaintiffs, knowing it would reach the ultimate consumer without any substantial change to its condition, worked as intended, as described in the Instruction Manual and that it contained no defects.

108.    Bass Pro Shops breached that warranty, by among other things, selling the Subject Firearm that did not work as intended and described and that contained defects.

109.    Defendants' breaches were a direct and proximate cause of Mr. Dacal's injuries.

110.    Mr. Dacal was a foreseeable user of the Subject Firearm and is a third party beneficiary of all warranties.

111.    The Subject Firearm was not reasonably fit for either the uses intended or the uses reasonably foreseeable and as a direct and proximate result, the drop-fire incident occurred, severely and permanently injuring Mr. Dacal.

WHEREFORE, Plaintiff Victor Dacal demands judgment against Bass Pro Shops and the Taurus Defendants for all damages available under the law, including punitive damages, prejudgment and postjudgment interest, and such further relief as may be available, including but not limited to an award of attorneys' fees and costs.

## COUNT VI
## STRICT LIABILITY - FAILURE TO WARN
### *(against all Defendants)*

112.    Plaintiff Mr. Dacal re-alleges and incorporates herein all allegations contained in Paragraphs 1 through 71.

113.    The Defendants had a duty to adequately warn Mr. Dacal about the likelihood of an accidental discharge of the Subject Firearm if it is dropped, including the existence of the Drop-Fire Defect.

114.    The warnings accompanying the Subject Firearm were inadequate and/or misleading.

115.    Instead of warning that a GX4 pistol – and thus the Subject Firearm -- would accidentally discharge a bullet when dropped, the Instruction Manual created by the Taurus Defendants stated the opposite, claiming the Subject Firearm contained two (2) different safety systems – the trigger safety and the firing pin block -- that would prevent the firearm from discharging a bullet if accidentally dropped.

116.    Although the Instruction Manual in a different section states that the firearm "may" discharge if accidentally dropped, this warning is inadequate where the Instruction Manual also describes, in large font and great detail, two (2) distinct safety features specifically designed to prevent such an accidental discharge.

117.    Further, the Taurus Defendants knew or should have known of the likelihood of discharge when the firearm is accidentally dropped and thus should have also warned to never keep the gun loaded. Instead, the Instruction Manual states it is proper and contemplated that the user will keep the gun loaded, especially since the firearm was specifically designed for concealed carry and protection.

118.    Additionally, the Taurus Defendants should have acted promptly and issued a timely warning of the likelihood of the firearm discharging when accidentally dropped as is currently and prominently featured on its public website and Instagram account, but which warning was never issued prior to the drop-fire incident.

119.    Plaintiffs relied on these inadequate and/or misleading warnings when selecting, purchasing and using the Subject Firearm, and in keeping the Subject Firearm loaded in its holster on the nightstand for protection.

120.    Bass Pro Shops was the authorized retailer that sold the Subject Firearm with the inadequate and/or misleading warnings.

121.    Bass Pro Shops provided Plaintiffs the Instruction Manual containing the inadequate and/or misleading warnings at the time of the sale of the Subject Firearm.

122.    Mr. Dacal was a foreseeable user of the Subject Firearm.

123.    Had the Defendants properly warned purchases, owners, foreseeable and end-users of the Drop-Fire Defect and inherent danger if the firearm is loaded and accidentally dropped or impacted, Plaintiffs would not have purchased the Subject Firearm and the damages suffered by Plaintiffs would not have occurred.

124.    Mr. Dacal suffered significant and permanent injury by using the Subject Firearm as intended, when it accidentally fell off the nightstand and discharged a bullet striking Mr. Dacal.

125.    The failure to provide adequate and not misleading warnings was the direct and proximate cause of Mr. Dacal's injuries.

WHEREFORE, Plaintiff Mr. Dacal demands judgment against all Defendants for damages available under the law, including punitive damages, prejudgment and postjudgment interest, and such further relief as may be available, including but not limited to an award of attorneys' fees and costs.

## COUNT VII
## <u>FRAUDULENT MISREPRESENTATION</u>
### *(against the Taurus Defendants)*

126.    Plaintiffs Mr. Dacal and Ms. Hernandez re-allege and incorporate herein all allegations contained in Paragraphs 1 through 71.

127.    The Taurus Defendants made material misrepresentations of fact including, without limitation, that the Subject Firearm (i) "was made free of defects in material, function, and

workmanship;" (ii) comes equipped with multiple Safety Systems including a Trigger Safety designed to "prevent the trigger mechanism from bring actuated in the event the firearm was accidentally dropped;" and (ii) comes equipped with a Firing Pin Block designed "to prevent the gun from firing in the event it was accidentally dropped." *See* Instruction Manual, p. 8, Warranty, p. 34.

128.    The Taurus Defendants knew these representations were false at the time they were made and/or learned these representations were false and failed to take the appropriate steps to correct them and/or were reckless about the veracity of these statements.

129.    The Taurus Defendants intended or expected that purchasers of their firearms would rely on their statements.

130.    Plaintiffs justifiably relied on these statements in selecting the Subject Firearm for purchase, and in purchasing, retaining, carrying and using the Subject Firearm.

131.    Mr. Dacal was a foreseeable user of the Subject Firearm.

132.    As a direct and proximate result of the Taurus Defendants' misrepresentations, Plaintiffs have been and continued to be damaged.

WHEREFORE, Plaintiffs Mr. Dacal and Ms. Hernandez demand judgment against the Taurus Defendants for damages available under the law, including punitive damages, prejudgment and postjudgment interest, and such further relief as may be available, including but not limited to an award of attorneys' fees and costs.

## COUNT VIII
## NEGLIGENT MISREPRESENTATION
### *(against the Taurus Defendants)*

133.    Plaintiffs Mr. Dacal and Ms. Hernandez re-alleges and incorporates herein all allegations contained in Paragraphs 1 through 71.

134.    The Taurus Defendants made material representations of fact that were false including, without limitation, that the Subject Firearm (i) "was made free of defects in material, function, and workmanship;" (ii) comes equipped with multiple Safety Systems including a Trigger Safety designed to "prevent the trigger mechanism from bring actuated in the event the firearm was accidentally dropped;" and (ii) comes equipped with a Firing Pin Block designed "to prevent the gun from firing in the event it was accidentally dropped." *See* Instruction Manual, p. 8, Warranty, p. 34.

135.    The Taurus Defendants either lacked the requisite knowledge as to the truth or falsity of the representations, or the representations were made under circumstances in which the Taurus Defendants should have known of their falsity.

136.    The Taurus Defendants intended or expected that purchasers of their firearms would rely on their statements.

137.    Plaintiffs justifiably relied on these statements in selecting the Subject Firearm for purchase, and in purchasing, retaining, carrying and using the Subject Firearm.

138.    Mr. Dacal was a foreseeable user of the Subject Firearm.

139.    As a direct and proximate result of the Taurus Defendants' misrepresentations, Plaintiffs have been and continue to be damaged.

WHEREFORE, Plaintiffs Mr. Dacal and Ms. Hernandez demands judgment against the Taurus Defendants for damages available under the law, including punitive damages, prejudgment and postjudgment interest, and such further relief as may be available, including but not limited to an award of attorneys' fees and costs.

## COUNT IX
## LOSS OF CONSORTIUM
### *(against all Defendants)*

140.    Plaintiff Mrs. Hernandez re-alleges and incorporates herein all allegations contained in Paragraphs 1 through 71.

141.    At all times material herein, Mrs. Hernandez was lawfully married to Mr. Dacal.

142.    During the marriage but prior to the drop-fire incident, Mr. Dacal was able to participate fully in all matters necessary to a successful marriage.

143.    As a direct and proximate result of the actions and/or omissions of Defendants as alleged herein, and the resulting physical injuries suffered by Mr. Dacal, directly and proximately caused by the acts and/or inactions of Defendants as alleged herein, Mrs. Hernandez has suffered the loss of consortium and other services from her husband, including but not limited to, the loss of love, affection, companionship, enjoyment of life, aid, support, and consortium and will continue to be so deprived.

144.    Mrs. Hernandez additionally has had to care for her husband and has been unable to carry on her normal activities and pursuit in the enjoyment of life.

145.    Additionally, Mrs. Hernandez has been caused mental pain and suffering for the serious and permanent injuries inflicted upon her husband.

WHEREFORE, Plaintiff Madeleine Hernandez demands judgment against all Defendants for damages available under the law, including punitive damages, prejudgment and postjudgment interest, and such further relief as may be available, including but not limited to an award of attorneys' fees and costs.

## PRAYER FOR PUNITIVE DAMAGES

146.    Plaintiffs are entitled to an award of punitive damages based upon the Taurus Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and welfare, as described herein.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable.


Dated: March 12, 2024                    Respectfully Submitted,


                                         /s/Chelsea E. Koff
                                         Chelsea E. Koff, Esq.
                                         Florida Bar No. 100557
                                         Craig S. Barnett, Esq.
                                         Florida Bar No. 35548
                                         STEARNS WEAVER MILLER WEISSLER
                                         ALHADEFF & SITTERSON, P.A.
                                         200 East Las Olas Boulevard, Suite 2100
                                         Fort Lauderdale, Florida 33301
                                         Email:    cbarnett@stearnsweaver.com
                                                   ckoff@stearnsweaver.com
                                                   mhernandez@stearnsweaver.com
                                         Telephone: (954) 462-9553
                                         Facsimile:  (954) 462-9567


                                         /s/M. Todd Wheeles
                                         M. Todd Wheeles (*Pro Hac Vice*)
                                         Matthew G. Garmon (FL Bar No. 121519)
                                         **WHEELES & GARMON, ATTORNEYS AT LAW**
                                         3000 Riverchase Galleria, Suite 905
                                         Birmingham, Alabama 35244
                                         Telephone:(205) 988-9253
                                         Email:    todd@wheelesgarmonattorneys.com
                                                   matt@wheelesgarmonattorneys.com


                                         *Counsel for Plaintiffs*